IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SPENCER KNIGHT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FRANKLIN J. TENNIS, et al. | : | NO. 05-5107 |

<u>REPORT AND RECOMMENDATION</u>

**JACOB P. HART**
**UNITED STATES MAGISTRATE JUDGE**               June   23   , 2006

     In May, 2004, Knight filed his first petition for habeas corpus.  Because Knight had included both exhausted and unexhausted claims in that petition, the undersigned recommended that the petition be dismissed as mixed.  On September 29, 2004, the Honorable Norma Shapiro, to whom the case was assigned, approved and adopted the Recommendation.  The petition was dismissed without prejudice.  Knight has now filed a second habeas petition presenting two claims for our review.  For the reasons that follow, I recommend that the petition be denied.

**<u>FACTS AND PROCEDURAL HISTORY</u>:**

     On August 15, 2002, after a bench trial, the Honorable Benjamin Lerner found Knight guilty of first degree murder and related weapons offenses.  The charges arose from the shooting death of George Dean on December 7, 1999.[1]  Immediately after trial, Judge Lerner sentenced Knight to life imprisonment for the murder conviction and a concurrent sentence of two to five years' imprisonment for possessing instruments of crime.  (N.T. 8/15/02, 122).

     Knight filed a direct appeal claiming that the evidence was insufficient to support the murder conviction and that the motion to suppress his statements to the police was improperly

---

     [1]The details of the shooting are discussed later in this Report when we address Knight's sufficiency of the evidence claim.  <u>See</u> <u>infra</u>, at 4-5.

denied. The Superior Court affirmed the judgment of sentence on March 2, 2004. Commonwealth v. Knight, 850 A.2d 10 (Pa. Super. 2004). At that time, Knight did not seek further review by the Pennsylvania Supreme Court.

On May 27, 2004, Knight filed a petition pursuant to Pennsylvania's Post Conviction Relief Act, ("PCRA"), 42 Pa.C.S.A. §§ 9541-9551. While the PCRA petition was pending, Knight filed a petition in this court for habeas corpus. As mentioned before, he not only presented the two claims that he had presented in his direct appeal, but also included three additional claims. The petition was dismissed as mixed on September 29, 2004.

In the meantime, Knight pursued his PCRA appeal, asking the PCRA Court to reinstate his right to seek review in the Pennsylvania Supreme Court. On March 7, 2005, the PCRA Court reinstated Knight's right to file a discretionary appeal in the Pennsylvania Supreme Court. On August 23, 2005, the Pennsylvania Supreme Court denied allocatur. Commonwealth v. Knight, 197 EAL 2005.

On September 26, 2005, Knight filed this petition for habeas corpus, presenting the sufficiency of the evidence claim and the suppression issue he presented in his direct appeal.[2] These issues are ripe for federal review.

**DISCUSSION:**

<u>Sufficiency of the Evidence</u>

In his first claim, Knight contends that the evidence was insufficient to support the first

---

[2]We note that, in his petition, Knight briefly discusses a claim of ineffectiveness of counsel. This claim, however, is not listed as an enumerated claim. Such a claim has not been properly presented to the state courts, is not exhausted, and would, in any event, be procedurally defaulted.

2

degree murder conviction. In reviewing challenges to the sufficiency of the evidence, the question for the habeas court is "whether, after reviewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Sullivan v. Cuyler</u>, 723 F.2d 1077, 1083-84 (3d Cir. 1983)(quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)) (emphasis in original).

Here, Knight claims, as he did in the state courts, that he acted in self defense. According to Knight, he was reacting to a movement made by the victim. (Petition, at 8). The trial court rejected Knight's self-defense claim and the Superior Court affirmed the judgment. The Superior Court set forth the standard for a self-defense claim pursuant to Pennsylvania law.

> Where there is a claim of self-defense, the Commonwealth has the burden to prove beyond a reasonable doubt that the killing was not committed in self-defense. In order to disprove self-defense, the Commonwealth must prove beyond a reasonable doubt one of the following elements: (1) that the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat and that retreat was possible with complete safety. If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue.

<u>Commonwealth v. Knight</u>, 2885 EDA 2002, at 2. Reviewed in light of this standard, the state courts found,

> nothing the [victim] said or did on the day of the shooting or, for that matter, during the days prior to the shooting, provided legally sufficient provocation to justify or excuse the killing in any way. [Knight's] actions prior to and on the day in question, however, clearly demonstrated a specific and fully formed intent to kill [the victim]. The evidence presented at trial convinced the trial court that [A]ppellant shot and killed [the victim] out of anger rather than any immediate fear for his own safety.

Commonwealth v. Knight, 2885 EDA 2002, at 3 (quoting Trial Court Opinion, 3/28/03, at 6).

Construing the evidence in the light most favorable to the Commonwealth, as we are required to by Jackson, supra, the evidence was sufficient to support the conviction for first degree murder.  The evidence at trial established that Knight and the victim had ongoing disagreements and, had violent confrontations in the past.  (N.T. 8/12/02, 80-85, 86-87, 94; 120-21; 8/15/02, 33-34).  According to Knight's own statement to the police, he obtained the gun to protect himself from the victim.  He hid the gun in bushes outside his mother's house.  (N.T. 8/12/02, 121-22).

On the afternoon of December 7, 1999, the victim and some friends were gathered outside Mendoza's Grocery Store on 63rd and Lansdowne Streets.  (N.T. 8/15/02, 14-15).  Again, according to Knight's own statement, he saw the victim outside Mendoza's, entered the store, and then left.  He went and retrieved the gun, deciding that if provoked, he would shoot the victim.  (N.T. 8/12/02, 122).  Knight stated that the victim "flinched" and he shot him.

> So I went out of the store and went back and got the gun.  I had it in some bushes . . . down from my mom's house. . . . So I walked back up or whatever to where George was still standing . . . I said to myself, you know, if he act [sic] like he's reaching or whatever I'm gonna shoot him . . . .  So I was walking up, and George was, you know, standing with a girl and a guy. . . .  Then he just flinched and I was like, you know, I had the gun next to the bag or whatever, and I was like, I shot him like three or four times or whatever.  He ran away towards 63rd and Lansdowne Avenue or whatever.

(N.T. 8/12/02, 121-22).

According to James Hobson, an eyewitness to the shooting, Knight passed the group and entered Mendoza's Grocery Store.  Knight then left the store with a plastic bag and walked up 63rd Street.  About five minutes later, Knight returned with the plastic bag wrapped around his

4

hand.  When he was about a foot away from the victim, he "just started firing."  (N.T. 8/15/02, 15-18).   Mr. Hobson stated seven shots were fired.  After the third shot, the bag that had been covering the gun had "tore up" and he identified the gun as a .25 caliber automatic.  (N.T. 8/15/02, 47).

Chajelia Johnson, another eyewitness to the shooting, stated that Knight and another man just walked up to the group, passed her, and shot at the victim.  (N.T. 8/12/02, 70-73).  The victim immediately began running away.  When asked if the victim had any reaction prior to the shots being fired, she responded that he had not.  (N.T. 8/12/02, 73).

Bennett G. Preston, M.D., the Medical Examiner, testified that the victim suffered two gunshot wounds.  One of the bullets entered the victim's left chest, pierced the left lung, the heart, the right lung, and then lodged in the muscle of the right chest.  (N.T. 8/15/02, 6-7). The second wound was to the left, lower back.  The bullet went through the left kidney, the spleen, the bowel, and the stomach.  (N.T. 8/15/02, 7-8).

Faced with this evidence, the state courts properly determined that there was sufficient evidence to support the verdict.  Rather than retreating from the situation, as is required to establish self-defense, Knight forced the confrontation, after having obtained a weapon.  Without provocation, Knight killed his victim in cold blood.

<u>Motion to Suppress</u>

Knight also claims that the trial court erred in failing to suppress the statement that he made to the police.  Knight alleges that the police obtained the statement only after refusing to allow him to speak with his attorney or his father.  During the suppression hearing, held just prior to the start of the bench trial, Judge Lerner heard from both Detective John McNamee, who took

the statement, and Knight. (N.T. 8/12/02, 5-40). Knight testified that, before giving any statement to the police, he requested the presence of his lawyer or his father. (N.T. 8/12/02, 28, 34-35). In response to his request, the detectives said, "we not [sic] going to play no games. We know you did it, and we got you." (N.T. 8/12/02, 28). Detective McNamee, on the other hand, stated that he read Knight his Miranda rights and Knight never requested counsel or the presence of any family member. (N.T. 8/12/02, 21).

The statement that Knight gave was an exhibit at the suppression hearing. Detective McNamee explained that the questions and answers were written verbatim and, at the end of the interview, Knight was asked to sign each page. (N.T. 8/12/02, 9). Prior to the questions that would constitute the interrogation, the statement contains a list of seven questions. Detective McNamee explained that Knight's oral responses were written down and he was then asked to initial each response and sign at the bottom of the page. The questions and responses are as follow:

1. Do you understand that you have a right to keep quiet, and do not have to say anything at all?
    Yes
2. Do you understand that anything you say can and will be used against you?
    Yes
3. Do you want to remain silent?
    No
4. Do you understand that you have a right to talk with a lawyer before we ask you any questions?
    Yes
5. Do you understand that if you cannot afford to hire a lawyer, and you want one, we will not ask you any questions until a lawyer is appointed for you free of charge?
    Yes
6. Do you want to talk with a lawyer at this time, or to have a lawyer with you while we ask you questions?
    No
7. Are you willing to answer questions of your own free will, without force or fear, and

    without any threats or promises having been made to you?
    Yes

(Statement of Knight, 3/30/00, at 2 - Exhibit CM-1 in Exhibit Envelope).

  After each response, there is an indecipherable mark.  Detective McNamee explained that the mark is what Knight wrote after each answer when he was asked to initial each response. (N.T. 8/12/02, 19-19).  Knight signed the bottom of the page.  (Statement of Knight, 3/30/00, at 2; N.T. 8/12/02, 12).

  After hearing the testimony and reviewing the exhibit, the trial court denied the motion to suppress, rejecting Plaintiff's testimony and crediting that of Detective McNamee.  The Superior Court affirmed the decision, noting that it was not in the position to overturn such a credibility determination.  Commonwealth v. Knight, 2885 EDA 2002, at 4.

  In the habeas forum, factual determinations, including credibility determinations, are presumed correct and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)(in reviewing a Batson claim, credibility determination made by trial court regarding reason for strike is accorded deference).  Here, Knight has presented no evidence to cause us to question the trial court's credibility determination, let alone rebutted the finding by clear and convincing evidence.  The state court's decision represents a reasonable determination of the facts.

Therefore, I make the following:

## **R E C O M M E N D A T I O N**

AND NOW, this 23rd day of June , 2006, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be DENIED.  There has been <u>no</u> substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.

    /s/ Jacob P. Hart
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SPENCER KNIGHT : CIVIL ACTION
:
v. :
:
FRANKLIN J. TENNIS, et al. : NO.  05-5107

**O R D E R**

NORMA L. SHAPIRO, S.J.,

AND NOW, this            day of                  , 2006, upon careful and independent consideration of the petition for writ of habeas corpus, and after review of the Report and Recommendation of United States Magistrate Judge Jacob P. Hart, IT IS ORDERED that:

    1.  The Report and Recommendation is APPROVED and ADOPTED.

    2.  The petition for a writ of habeas corpus is DENIED.

    3.  There is no basis for the issuance of a certificate of appealability.

BY THE COURT:

_____
NORMA L. SHAPIRO, S.J.